JACOBS ET AL. *v.* BENEDICT, PRESIDENT, BOARD OF EDUCATION, ET AL.

(No. A-722229—Decided June 12, 1973.)

Court of Common Pleas of Hamilton County.

*Mr. Paul H. Tobias,* for plaintiffs.
*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Arthur M. Ney,* for defendants.

BETTMAN, J.  Plaintiffs herein seek a decree declaring defendants' rules concerning hair length and hair style to be null and void; enjoining defendants from enforcing such rules and for an order directing defendants to reinstate plaintiff to his position as president of the student council and member of the honor society and allowing him to participate in extra-curricular activities and directing defendants to expunge and delete the point reduction in grades imposed upon him and any other detrimental notations on plaintiff's school record on account of his hair style.

The facts in brief are that plaintiff is a student at Colerain Junior High School; that defendant, the Board of Education of the Northwest School District, which has jurisdiction over the school, adopted a dress and appearance code applicable to students which, among other provisions, prohibited mustaches and regulated the length of hair and the dimensions of sideburns.  Upon plaintiff's failure to comply with these "hair" regulations plaintiff was penalized in the previously alluded to ways.  A temporary order preserving the *status quo* was agreed to and the matter is before the court on the merits.

We should say at the outset that there are what one court has referred to as a "thicket" of decisions on both sides of this issue.  None, however, have been reported by the Ohio Supreme Court or the Court of Appeals of this District.  We have accordingly studied a number of these cases but are proceeding without binding precedent.

The issue in this case, though apparently superficial, is in fact fundamental.  It is determined by Section 1 of Article I of the Constitution of the state of Ohio—the Bill of Rights, which states:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty * * * and seeking and obtaining happiness and safety."

It seems to us strikingly important that our founding fathers placed this section first in the Bill of Rights. It represents the embodiment of what this nation stands for. It enshrines in our Constitution our dedication to individual freedom and dignity. In non-legal terms Section 1 establishes the principle that every American has the right to be let alone and to be regulated by the government only so far as such regulation is shown to be necessary to protect others or to advance legitimate governmental purposes. This constitutional provision places a heavy responsibility on any governmental body to justify its interference with a citizen's freedom, his right to enjoy liberty of decision and to seek happiness in his own way.

As stated in *Palmer & Crawford* v. *Tingle* (1896), 55 Ohio St. 423, at page 441:

"The word 'liberty' as used in the first section of the Bill of Rights does not mean a mere freedom from physical restraint or state of slavery, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare."

There can be no doubt in anyone's mind that if the Legislature, which holds general legislative power as compared to the limited power of a board of education, enacted a law restricting the wearing of mustaches, sideburns and long hair, such legislation would swiftly be struck down as in violation of Section 1 of the Ohio Constitution's Bill of Rights.

There is no basis for denying this same constitutional right to minors. The Supreme Court of the United States has ruled that "neither the 14th Amendment nor the Bill of Rights is for adults alone." *In re Gault* (1967), 387 U. S. 1, at page 13.

The words of Mr. Justice Jackson in holding that a

board of education could not require children of Jehovah Witnesses to salute the American flag and give the pledge are pertinent:

"The Fourteenth Amendment, as now applied to the states, protects the citizen against the state itself and all of its creatures—boards of education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes." *West Virginia State Board of Education* v. *Barnette* (1943), 319 U. S. 624, at page 637.

Assuming arguendo, that under its "police power" the state acting through a board of education could constitutionally regulate mustaches and hair lengths of students, are the rules here at issue lawful?

The applicable section of the Ohio Revised Code is R. C. 3313.20, which provides:

"The board of education shall make such rules and regulations as are necessary for its government and the government of its employees, pupils of its schools, and all other persons entering upon its school grounds or premises. * * *,"

In determining the meaning of this section it is vital to bear in mind that neither this section or any other part of Chapter 3313 delegates to boards of education general legislative power. The word "necessary" obviously implies necessary to carry out the purposes of general public education. A board of education has that power and only that power to make rules and regulations over student conduct and status which are directly related to its function of educating the pupils in its charge. The test applied by the courts is that there must be a rational basis for the rule; it must be reasonable, and there must be a reasonable relationship between the rule and the furtherance of a valid educational purpose.

Various reasons have been advanced in this case to justify the board's rule. Let us take them up:

Teaching students neatness, cleanliness and good grooming is a necessary and proper part of the educational process. We concur. However, there was not one bit of evidence presented that plaintiff's hair, sideburns and mustache were at any time other than clean, neat and well groomed. Indeed the evidence was to the contrary. There is no rational relationship between the board's objective and the rule.

It was argued that short hair is necessary for pupil safety. The theory advanced was that long hair might in some way interfere with the student's vision in class by hanging in front of his book or interfere with his vision in driver's education class or be caught in some machinery or experiment in chemistry class or interfere with his participation in athletics. As far as plaintiff personally was concerned, the evidence that this was true in this case was at best flimsy. Rules, however, must be tested as they apply to all the students. Using this test no evidence was presented that such problems could not easily be handled by tying the hair back without the necessity that it be cut off. Having seen bearded doctors and long haired football players, there obviously could be no such evidence. Again there was no rational relationship between the rule and the objective.

Defendants argue that long hair causes distraction to other students. Though there was no evidence that plaintiff's hair caused any distraction in his classes, we must again consider the question whether the rule was necessary for students generally. One could cause considerable distraction in class by shaving one's head completely, so clearly the problem was not Jacob's mustache or hair length but whether he was intentionally wearing his hair in such manner as to distract his fellow-students. This was not what the rule provided. It set a purely arbitrary line unrelated to the problem.

It was further contended that long hair can cause disruption in school because short-haired boys might beat

up long-haired boys. As far as plaintiff was concerned, there was no such evidence. Assuming the hypothesis, the argument carries no more weight than arguing that students of one race should not be admitted to a school because students of another race might attack them.

In *Tinker* v. *Des Moines Independent Community School District* (1969), 393 U. S. 503, at page 508, the Supreme Court dealt with the same argument against permitting students to wear arm-bands protesting the Vietnam war. It said:

"* * * But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our constitution says we must take this risk * * * and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society."

We believe the same logic applies here.

Educational experts who testified as witnesses for the parties were in agreement that the educational process involves much more than just the teaching of subject matter. Education involves teaching students to think; to understand who they are; where they are in relation to others, to their community and to their country; understanding their privileges and responsibilities as citizens; and as part of this, learning the meaning of discipline and of limits. Certainly the community and the parents have a right to look to the schools for this type of learning and reasonable school rules do have a clear relationship to this part of the educational process. Nevertheless, in determining whether a proposed rule is reasonable, boards of education must take into account the extent to which the rule invades the privacy and dignity of the student and,

as R. C. 3313.20 requires, whether such a rule is necessary.

A rule restricting hair length and style and prohibiting mustaches affects the student in the most intimate and personal way. History, literature and simple observation make this abundantly clear. Furthermore, ''hair'' rules control the student not only during the 35 hours per week he spends in school but control his appearance the other 133 hours of the week as well. It seems belaboring the obvious to point out that there are thousands of ways for schools to teach discipline and limits and an awareness of relationships with others and with the community without requiring that students cut off their hair and shave their mustaches. It seems equally obvious that to teach students that they must accept arbitrary authority, particularly in a matter as personal as this, is wholly alien to our concepts of a free society and the dignity of the individual.

Finally it is argued that the rule in question represents the ideas, thinking and demands of the majority of the community, the parents and the students. Their wish to regulate themselves and their own children in a certain fashion is certainly entitled to respect but they have no right to impose their personal preferences on plaintiffs. Forcing the individual to conform simply for conformity's sake is antithetical to our American tradition of rugged individualism and wholly repugnant to the laws and Constitution of Ohio.

Accordingly, the relief prayed for by plaintiffs should be granted in full with the exception of the prayed for damages. Damages may not be recovered against public officials acting in their official capacity without proof of malice, which was wholly absent here.

Entry may be presented accordingly, at defendants' cost.

*Judgment accordingly.*